Sylvia Drayton, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Children's Hospital of Philadelphia, Intervenor.

Argued August 24, 1981, before Judges Rogers, Blatt and MacPhail, sitting as a panel of three.

*Andrew F. Erba,* for petitioner.

*Alan D. Berkowitz,* with him *Mari M. Gursky, Dechert, Price & Rhoads,* for intervenor.

No appearance for respondent.

OPINION BY JUDGE ROGERS, September 24, 1981:

Sylvia Drayton seeks review of a decision of the Unemployment Compensation Board of Review denying her claim for benefits on the grounds that her dismissal from a position as a respiratory therapist technician at the Children's Hospital of Philadelphia was on account of her willful misconduct within the meaning of Section 402(e) of the Unemployment Compensation Law, 43 P.S. §802(e).

The Board found that the claimant had committed a number of infractions of the rules and policies governing her employment. The claimant contends that these findings are supported only by incompetent evidence consisting of hearsay testimony of her supervisor, Mr. Tridico, which was objected to at the hearing. On the contrary, the Board's findings rest on written disciplinary records which were made promptly upon report of the incidents described, and were offered and admitted into evidence after authentication by their custodian, Mr. Tridico. Such business records are excepted from hearsay objection. *Siler v. City of Harrisburg,* 54 Pa. Commonwealth Ct. 303, 422 A.2d 704 (1981); *Dudley v. Unemployment Compensation Board of Review,* 36 Pa. Commonwealth Ct. 186, 387 A.2d 996 (1978). Moreover, the two most serious incidents relied on by the Board are adequately supported by competent record evidence and these incidents alone constitute disqualifying willful misconduct. Therefore, we affirm.

Specifically, the Board found that

4. On January 18, 1980 the claimant failed to notify her department head of an urgent medical problem. The claimant had been informed that it was important that she notify this individual of the need for cultures to be taken because of a contagious disease but the claimant failed to do so. The claimant did not possess

good cause for this failure, and she received an oral warning as a result.

This finding is supported by the testimony of Mr. Tridico who, after describing the incident, which involved the claimant's failure to notify her superior of control measures recommended by an infection control nurse with regard to a possible meningitis outbreak, testified as follows:

Q. Now as a result of the 1/18/80 incident, did the claimant make any admissions, denial, or give you any satisfactory explanation?

A: Yes, sir, she did.

Q: What?

A: She admitted that she had received the call [from the infection control nurse]. She forgot to tell me, and she felt that it wasn't a big deal anyway.

Q: How important was this?

A: It was very important, Referee Watt.

Q: What was it?

A: It was the possible exposure of several employees to meningitis bacteria.

Q: And you say she did make this admission?

A: Yes, sir.

Of course, testimony as to an admission by the claimant is competent evidence available to support the Board's finding. *Kilpatrick v. Unemployment Compensation Board of Review*, 59 Pa. Commonwealth Ct. 201, 429 A.2d 133 (1981); *Unemployment Compensation Board of Review v. Houp*, 20 Pa. Commonwealth Ct. 111, 340 A.2d 588 (1975).

The Board also found that

6. On February 26, 1980 the claimant refused to deliver an oxygen monitor to another floor because she felt that it was time for her break. The claimant has flexible break time and could

have taken same after the monitor had been delivered.

This finding is adequately supported by the claimant's own testimony. She testified on direct examination:

Q: ... With regard to your ignoring a request for an oxygen monitor although you were told twice, do you remember that incident?

. . . .

Q: Now when you were told, what was your response? Did you say, as alleged by them, 'They will have to wait. I'm going on break.' It's quoted by the party. What did you respond?

A: I told her that I was getting ready to go on break and I would take it when I came back. That's what I told her.

On cross-examination the claimant elaborated as follows:

Q: When you are asked to bring an oxygen monitor up, are you supposed to do that right away or are you supposed to take a break first?

A: I use my own discretion.

Q: And that's your practice in the department?

A: Yeah, well, at times you have to use your own discretion there.

Q: Isn't it the rule in the department that you take a break when you don't have any assignments?

A: No, I don't know about that.

Q: You don't have set times for breaks, do you?

A: No, we don't.

Q: You do your break when you have free time, right?

A: Right.

Q: And you had an outstanding request for an oxygen monitor, right?

A: Yes, but ....

Q: But you took a break anyway?

A: Yes.

We agree with the Board that these incidents constitute willful misconduct.

Order affirmed.

### ORDER

AND NOW, this 24th day of September, 1981, the order of the Unemployment Compensation Board of Review is affirmed.